IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CHRISTOPHER D. COBB, | |
| Plaintiff, | CIVIL ACTION NO.: 2:20-cv-84 |
| v. | |
| WARDEN FNU GETER, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants' Motion to Dismiss. Doc. 24. Plaintiff filed a Response opposing Defendants' Motion. Doc. 28. Defendants replied. Doc. 33. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

**PROCEDURAL HISTORY AND BACKGROUND**

On August 11, 2020, Plaintiff, an inmate at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), brought this suit, asserting claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Doc. 1. Plaintiff amended his Complaint, and the Court determined his Complaint, as amended, survived frivolity review. Docs. 17, 18.

Plaintiff states an inmate hunger strike started on August 5, 2020, as a result of the Bureau of Prisons' ("BOP") nationwide lockdown. Doc. 17 at 4–5. On August 6, 2020, inmates continued to refuse food. Id. at 5. Plaintiff then alleges prison officials removed three inmates from general population for leading unauthorized group activity. Id. Out of concern for those inmates, prisoners went out onto a "porch" area. Id. Shortly after, the inmates were told to return to their cells. Id. at 6. Plaintiff then alleges prison staff "conducted violent action" against the inmates. Id. at 2, 6.

## DISCUSSION

Defendants argue Plaintiff's cause of action is due to be dismissed for multiple reasons: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff does not allege personal involvement of Defendants to support a claim against them; (3) Plaintiff cannot assert claims against Defendants in their official capacities; (4) Plaintiff cannot assert a Bivens claim for violation of the First Amendment; and (5) Plaintiff cannot seek injunctive or monetary relief in this action. Doc. 26 at 6–24. As to exhaustion of administrative remedies, Plaintiff argues he was not required to exhaust administrative remedies, as they were not reasonably available and the request for dismissal is premature. Doc. 28 at 1–4.

**I.     The Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

2

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

3

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under

the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 639; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The

PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

6

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

#### A. The Bureau of Prisons' ("BOP") Administrative Remedies

FCI Jesup, where Plaintiff is incarcerated, utilizes the BOP procedures for prisoner grievances. The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP. § 542.10(b) ("[The Administrative Remedy Program] applies to all inmates in institutions operated by the Bureau of Prisons . . . ."). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request ("BP-9") within 20 calendar days of the incident giving rise to the grievance. § 542.14(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response. § 542.15(a). If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. Id. Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative

remedy process.  Id.  An inmate must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.

### B.      Plaintiff Did Not Exhaust Available Administrative Remedies

Defendants argue Plaintiff did not exhaust his administrative remedies and point out Plaintiff has not filed any administrative remedy requests since the August 6, 2020 incident.  Doc. 24 at 7.  While Plaintiff admits he did not file an administrative remedy request, he argues the remedy was not reasonably available.  Doc. 28 at 2.

#### 1.      *Plaintiff's claim survives under <u>Turner</u> step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.  Plaintiff's allegations and Defendants' allegations plainly conflict.  While both parties agree Plaintiff did not file a formal written remedy request against Defendants, Plaintiff asserts he did not pursue administrative remedies because he worried about further violence if he filed an official remedy request and he could not access the necessary BP-9 form while his unit was on lockdown.  Doc. 28 at 3.

Proper exhaustion of Plaintiff's claims requires him to exhaust his administrative remedies by following BOP procedures.  However, exhaustion may be excused where it is unavailable.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first step of the Turner test.  Plaintiff states his attempts and requests for a BP-9 form were ignored and he was fearful of alerting local staff of his complaints.  Doc. 28 at 3.  Thus, the administrative remedies were unavailable to him.

### 2. Plaintiff's claim fails under Turner step two.

The parties' filings present a factual question under Turner step two. Specifically, the Court must determine if the administrative remedies were available to Plaintiff while A Unit was in lockdown and whether Plaintiff could have requested an extension to file an untimely BP-9 under the prison's policy.

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack v. Sikes, No. CV 307-42, 2008 WL 4104148, at *6 (S.D. Ga. Sept. 4, 2008) (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must

9

allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion, demonstrating the parties have had ample opportunity to develop the record.

The materials in the record the parties rely on support Defendants' position and do not support Plaintiff's contention administrative remedies were unavailable to him.  Defendants have submitted an affidavit from Counselor Merle Goarcke in which he asserts he never refused Plaintiff an administrative remedy form.  Doc. 24-1 at 3.  Counselor Goarcke also affirms there was never a time where no administrative remedy forms were at hand.  Id.  Defendants have submitted evidence that, even if Counselor Goarcke did not provide him forms, Plaintiff could have requested a form from the unit manager or a correctional officer.  Doc. 33-1 at 3.  Finally, Defendants have provided evidence showing other inmates were able to file grievance forms while in A Unit during the same time Plaintiff complains of not having access to forms—August and September of 2020.  Doc. 24 at 10; Doc. 24-1 at 28–29.  This evidence plainly and convincingly contradicts Plaintiff's contention Counselor Goarcke refused to provide him with a form, rendering the administrative remedies process unavailable.  It is also telling that Plaintiff signed his Complaint just one day after the alleged event occurred, demonstrating Plaintiff made little or no attempt to exhaust any administrative remedies.  Therefore, I conclude Plaintiff failed to exhaust his available administrative remedies.

Plaintiff argues the administrative remedies would have been futile, given the hostility between inmates and guards at FCI Jesup.  Doc. 28 at 2.  However, a prisoner's belief about the viability of a grievance process is irrelevant to proper exhaustion.  See Higginbottom v. Carter,

10

223 F.3d 1259, 1261 (11th Cir. 2000) (holding the PLRA requires exhaustion even when the prisoner believes the grievance process is futile).  To the extent Plaintiff is asserting he would have been in danger after seeking an administrative remedy, 28 C.F.R. § 542.14(d)(1) provides a possibility of bypassing the institutional-level grievance procedure by seeking an administrative remedy directly from the Regional Director.  Thus, he could still have exhausted his administrative remedies, despite his fear of danger.

Plaintiff also asserts the list relied on by Counselor Goarcke, doc. 24-1 at 28–29, is inaccurate because it fails to show what level of remedy was granted for each submission.  Doc. 28 at 3.  Plaintiff argues this is relevant because whether he could have obtained a BP-9 remedy reflects if he had access to the remedy.  Id.  This argument is unavailing.  In their Reply, Defendants submitted a log showing all the requested remedies were BP-9 remedies.  See Doc. 33-1 at 6–7; see also Doc. 33-1 at 3 (explaining the "F" in the remedy number indicates BP-9 level requests).  Contrary to Plaintiff's assertions, it appears BP-9 level remedy forms were being submitted and considered in the time period Plaintiff complains the remedies were unavailable.

Finally, Plaintiff argues he would not have been able to speak to a different counselor in A Unit to obtain a remedy form because no other counselor was stationed there.  Id. at 4.  However, as discussed above, Plaintiff could have asked several different people to provide him with a BP-9 remedy form.  Thus, the suggestion Plaintiff could only speak to Counselor Goarcke for a remedy form is unconvincing.

Even assuming Plaintiff was unable to obtain a BP-9 form, he still failed to exhaust available administrative remedies.  Inmates may request an extension if they fail to file their grievance within the 20-day window.  See 28 C.F.R. § 542.14(a),(b).  Section 542.14 provides:

> Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

Thus, the BOP's policy provides a general rule for extensions—a valid reason for delay or when a situation prevented an inmate from submitting the request. The policy then provides a list of valid reasons for delay, including transit, physical incapacity, or an unusually long period of attempted informal resolution. This list is non-exhaustive, as indicated by use of the word "include." See Estate of Wallace v. C.I.R., 965 F.2d 1038, 1046 (11th Cir. 1992) ("We agree that the word 'including' makes the list of activities [in the statute] nonexclusive."). The list provides examples of situations where an extension would be granted, but it does not mean extensions will not be granted in other situations, such as the one Plaintiff contends was present here—the unavailability of grievance. Abram v. Leu, 848 F. App'x 868, 872 (11th Cir. 2021) ("A refusal to provide the forms necessary to initiate the grievance process appears to qualify as such 'a situation which prevented the inmate from submitting the request within the established time frame.'"). Thus, even assuming grievance forms were unavailable in Plaintiff's unit, Plaintiff still failed to exhaust available administrative remedies because he failed to attempt to obtain an extension to file an out-of-time grievance. Id. at 872–73 (explaining a prisoner-plaintiff fails to exhaust his administrative remedies where he does not attempt to obtain an extension and file an untimely grievance).

Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust

12

available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal. Because I have recommended dismissal based on Plaintiff's failure to exhaust, I decline to address Defendants' other arguments for dismissal.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of March, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA